IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CRYSTAL M., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:24CV899 |
| | ) |
| FRANK J. BISIGNANO, | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant.[1] | ) |

**MEMORANDUM OPINION AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Crystal M., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of the final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 1.) The Commissioner has filed the certified administrative record (Docket Entry 5 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 11 (Plaintiff's Brief); Docket Entry 12 (Commissioner's Brief)). For

---

[1] The United States Senate confirmed Frank J. Bisignano as the Commissioner of the Social Security Administration on May 6, 2025, and he took the oath of office on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank J. Bisignano should substitute as Defendant in this suit. Neither the Court nor the parties need take further action to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

the reasons that follow, the Court will enter judgment for the Commissioner.[2]

### I. PROCEDURAL HISTORY

Plaintiff applied for SSI (Tr. 353-61), alleging a disability onset date of November 14, 2018 (see Tr. 353).[3] Upon denial of that application initially (Tr. 118-37, 173-76) and on reconsideration (Tr. 138-48, 181-83), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 184-86). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 36-81.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 149-65.) The Appeals Council thereafter granted Plaintiff's request for review (Tr. 166-71, 287, 471-75), ruling that the ALJ's decision "d[id] not contain an adequate evaluation of whether [Plaintiff]'s alleged impairments post-traumatic stress disorder and bipolar disorder constitute[d] severe impairments" (Tr. 168), and ordered the ALJ to hold a new hearing (see id.).

---

[2] On consent of the parties, this "case [wa]s referred to [the undersigned] United States Magistrate Judge [] to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings []herein." (Docket Entry 9 at 1.)

[3] Notwithstanding Plaintiff's alleged onset date of November 14, 2018 (see Tr. 353), she lacked eligibility for SSI benefits until her application date of July 27, 2020 (see id.). See 20 C.F.R. § 416.202 (explaining that a claimant remains ineligible for SSI benefits until date he or she files SSI application); 20 C.F.R. § 416.501 (stating that a claimant may not receive SSI benefits for any period that predates first month he or she satisfies eligibility requirements, which cannot precede application date).

The ALJ convened a new hearing, which Plaintiff, her attorney, and a new VE attended (Tr. 82-117), after which the ALJ again denied Plaintiff's application for benefits (Tr. 14-35). The Appeals Council subsequently denied Plaintiff's request for review (Tr. 1-6, 350-52), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] has not engaged in substantial gainful activity since July 27, 2020, the application date.

2. [Plaintiff] has the following severe impairments: status-post left femur fracture with hardware placement; chronic pain syndrome; bipolar/major depressive disorder; generalized anxiety disorder; posttraumatic stress disorder.

. . .

3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

4. . . . [Plaintiff] has the residual functional capacity to perform light work . . . except that she should never climb ladders, ropes, or scaffolds, and can occasionally climb ramps and stairs as well as occasionally kneel and crawl. She can frequently crouch. Further, she can understand, remember, and carry out simple or detailed, but not complex work, or unskilled work of a routine and repetitive nature. She can maintain attention and concentration for at least two hour periods of time sufficient to carry out that work over the course of a normal workday for a normal work week. She can adapt to routine, infrequent workplace changes at a non-production pace (i.e., no assembly line

3

or conveyor belt type jobs).  She can tolerate occasional interaction with the public and frequent, not constant, interaction with coworkers and supervisors.

. . .

5.   [Plaintiff] is unable to perform any past relevant work.

. . .

9.   Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

. . .

10. [Plaintiff] has not been under a disability, as defined in the . . . Act, since July 27, 2020, the date the application was filed.

(Tr. 19-28 (bold font and internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  Plaintiff has not established entitlement to relief under the extremely limited review standard.

4

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is

5

disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[4] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in

---

[4] The Act "comprises two disability benefits programs. The Disability Insurance Benefits Program provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

6

addition to [the claimant's] medical condition."  Id.  "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps:  "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work."  Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[5]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry.  For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

---

[5] "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." <u>Mastro</u>, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." <u>Id.</u> at 179.[6]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant  work"; if so, the claimant does not qualify as disabled.  <u>Id.</u> at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." <u>Hall</u>, 658 F.2d at 264-65.  If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant]

_____

[6] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations."  <u>Hines</u>, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)."  <u>Hall</u>, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (<i>e.g.</i>, pain)."  <u>Hines</u>, 453 F.3d at 562-63.

remains able to work other jobs available in the community," the claimant qualifies as disabled.  <u>Hines</u>, 453 F.3d at 567.[7]

## B.  Assignment of Error

Plaintiff's first and only assignment of error maintains that "[t]he ALJ erred by failing to apply the correct legal standard when evaluating [Plaintiff]'s allegations of pain."  (Docket Entry 11 at 5 (bold font and block formatting omitted).)  More specifically, Plaintiff notes that "th[e] evidence and testimony indicates[ that Plaintiff] has been managing chronic pain syndrome since her leg fracture and continues to experience a significant degree of pain[, but that], despite th[at] testimony and evidence, the ALJ determined that [Plaintiff]'s condition was not as limiting as alleged."  (<u>Id.</u> at 6; <u>see also</u> <u>id.</u> at 5-6 (describing Plaintiff's testimony regarding her pain (citing Tr. 46, 48-50, 55, 77-78, 103-05, 114-15)), 6-7 (summarizing medical evidence Plaintiff alleges supports her complaints of severe pain (citing Tr. 859, 861, 889, 894-95, 899-900, 1025, 1028, 1038, 1041, 1065, 1067, 1098, 1101, 1108, 1110, 1231-32, 1244, 1250, 1252, 2262, 2408, 2543, 2546, 2550, 2556-57)).)  In particular, Plaintiff

---

[7] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

9

faults the ALJ for "requiring objective evidence to substantiate [Plaintiff]'s degree of pain and to evaluate her subjective complaints[,]" because "normal examination findings [such as normal strength, bulk, range of motion, and gait] do not in any way invalidate the symptoms that [Plaintiff] has actually alleged." (Id. at 7.) Plaintiff additionally contends that the United States Court of Appeals for the Fourth Circuit "recently addressed th[at] very issue" and "noted that, '[d]espite a history of pushback on subjective-statement reliance by the SSA, th[e Fourth Circuit] allows a claimant to rely exclusively on subjective evidence in proving that her symptoms are so continuous and/or severe that they prevented her from working.'" (Id. at 8 (brackets and ellipsis omitted) (quoting Oakes v. Kijakazi, 70 F.4th 207, 215 (4th Cir. 2023)); see also id. (quoting Arakas v. Commissioner, Soc. Sec. Admin., 983 F.3d 83, 97-98 (4th Cir. 2020), for proposition that "ALJs may not rely on objective medical evidence (or the lack thereof) - even as just one of multiple factors - to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence").) In addition, Plaintiff challenges the ALJ's observation that Plaintiff "has a generally stable treatment history, and has been taking an opioid, with sparse changes" (id. (citing Tr. 23)), because "[the ALJ] cannot fault [Plaintiff ] for failing to pursue other

10

treatment options where none exist" (id. at 9 (citing Arakas, 983 F.3d at 101-02)).

Plaintiff further deems "[t]he ALJ's error . . . potentially outcome determinative" because, "by failing to adequately evaluate [Plaintiff]'s pain, the ALJ also failed to perform a proper function-by-function evaluation of all the contested and relevant functions[,]" such as "how long [Plaintiff] is capable of maintaining a seated, walking, or standing position." (Id. (citing Dowling v. Commissioner of Soc. Sec., 986 F.3d 377, 388-89 (4th Cir. 2021)).) In that regard, Plaintiff notes that "both VEs testified that [Plaintiff]'s alleged frequency of position change would be disabling" (id. (citing Tr. 77-78, 114-15)), and "other courts have found[ that] the frequency of position change may be disabling in and of itself and the ALJ should discuss this issue in the decision" (id. (citing Holland v. Commissioner of Soc. Sec. Admin., Civ. No. 17-1874, 2018 WL 1970745, at *10 (D. Md. Apr. 25, 2018) (unpublished))). For the reasons that follow, Plaintiff's assertions miss the mark.

The Commissioner's regulations adopt a two-part test for evaluating a claimant's statements about symptoms. See 20 C.F.R. § 416.929; see also Social Security Ruling 16-3p, Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *3 (Oct. 25, 2017) ("SSR 16-3p"). First, the ALJ must determine whether a claimant suffers from a "medically determinable

11

impairment that could reasonably be expected to produce [the claimant]'s symptoms, such as pain."  20 C.F.R. § 416.929(b); <u>see also</u> SSR 16-3p, 2017 WL 5180304, at \*3.  A claimant must provide "objective medical evidence from an acceptable medical source" to establish the existence of a medically determinable impairment "which could reasonably be expected to produce the pain or other symptoms alleged."  20 C.F.R. § 416.929(a); <u>see also</u> SSR 16-3p, 2017 WL 5180304, at \*3.  "Objective medical evidence" consists of medical "[s]igns" ("anatomical, physiological, or psychological abnormalities that can be observed, apart from [a claimant's] statements" and that "must be shown by medically acceptable clinical diagnostic techniques," 20 C.F.R. § 416.902(l)) and "[l]aboratory findings" ("anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques," 20 C.F.R. § 416.902(g)).  <u>See</u> 20 C.F.R. § 416.902(k); <u>see also</u> SSR 16-3p, 2017 WL 5180304, at \*3.

Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of "the intensity and persistence of [the claimant's] symptoms," as well as "the extent to which [those] symptoms limit [his or her] capacity for work."  20 C.F.R. § 416.929(c); <u>see also</u> SSR 16-3p, 2017 WL 5180304, at \*4.  In making that determination, the ALJ must "examine the entire case record, including the <u>objective medical</u>

12

evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, 2017 WL 5180304, at *4 (emphasis added). Where relevant, the ALJ will also consider the following factors in assessing the extent of the claimant's symptoms at part two:

1. [ D]aily activities;

2. The location, duration, frequency, and intensity of [] pain or other symptoms;

3. Precipitating and aggravating factors;

4. The type, dosage, effectiveness, and side effects of any medication [a claimant] take[s] or ha[s] taken to alleviate [] pain or other symptoms;

5. Treatment, other than medication, [a claimant] receive[s] or ha[s] received for relief of [] pain or other symptoms;

6. Any measures [a claimant] use[s] or ha[s] used to relieve [] pain or other symptoms (e.g., lying flat on [his or her] back, standing for 15 to 20 minutes every hour, or sleeping on a board, etc.); and

7. Any other factors concerning [a claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3); see also SSR 16-3p, 2017 WL 5180304, at *7-8. The ALJ cannot "reject [a claimant's] statements about the intensity and persistence of pain or other symptoms or about the effect [those] symptoms have on [the claimant's] ability to work solely because the available objective medical evidence does not

13

substantiate [the claimant's] statements." 20 C.F.R. § 416.929(c)(2) (emphasis added); see also SSR 16-3p, 2017 WL 5180304, at *5.

In this case, the ALJ found, at part one of the subjective symptom analysis, that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" (Tr. 22 (emphasis added)), but then determined, at part two, that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e ALJ's] decision" (id.). Immediately following those findings, the ALJ provided this analysis:

> Before the relevant period began as of the [SSI] application date of July 27, 2020, medical records revealed a history significant for a left femur fracture sustained during a November 2018 motor vehicle accident with surgical repair at that time. Notably, since then, postoperative clinical workup revealed signs of healing and no sign of hardware complication. By May 2019, x-rays confirmed a healed left femur fracture. It is noted that subsequent pain complaints, namely of the left leg, are well documented through the relevant time. However, the functional impact of chronic pain appeared less than remarkable as a whole. For example, despite complaints of worsening left leg pain and noted tenderness on exam in July 2020, [Plaintiff] appeared in no acute distress, and she had but mild effusion. Further, despite the alleged chronicity of inactivity, she had normal bulk and tone as well as normal strength.
>
> Additionally, during the relevant time, there was brief mention of [Plaintiff] ambulating with a cane in December 2020 and February 2021. Yet, even then, [she] had

14

grossly intact lower extremity range of motion. Also, during such time, the evidence did not reveal medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed. Nonetheless, for the relevant time, use of a cane appeared short-lived. [Plaintiff] otherwise presented with an upright gait in the absence of any use of a hand-held assistive device and she continued to exhibit grossly intact range of motion. Likewise, during other exams, [she] presented with a normal gait as well as normal strength with good muscle bulk and tone. Such evidence as a whole greatly contrasts with the alleged exertional difficulties and needing to recline most of the day.

Moreover, pain management records revealed a generally stable treatment history, including taking tapentadol, an opioid, with sparse changes through much of the period at issue. Also, except for brief mention of constipation, [she] did not endorse adverse side effects. This also sharply contrasts with the alleged functional impact, including inactivity and significantly reduced exertional capacity. Rather, such evidence with overall routine follow-ups strongly suggests that despite her symptoms, including pain and fatigue, [she] has not been as limited as alleged. Thus, in considering a prior left femur fracture with surgical repair and residual chronic pain along with the generally normal physical exams and stable pain management through the relevant time, the [ALJ] finds a[n RFC] for light work and reduced postural activities as set out [in the ALJ's decision] supported.

(Tr. 22-23 (emphasis added) (internal parenthetical citation omitted).)

Plaintiff first challenges the ALJ's reliance on objective findings such as normal bulk, strength, range of motion, and gait to discount Plaintiff's subjective symptom reporting because, "[i]n doing so, the ALJ applied an incorrect legal standard" under Oakes and Arakas. (Docket Entry 11 at 7; see also id. (quoting Oakes, 70

15

F.4th at 215, for proposition that "th[e Fourth Circuit] allows a claimant to rely exclusively on subjective evidence in proving that her symptoms are so continuous and/or severe that they prevented her from working" (brackets and ellipsis omitted), and Arakas, 983 F.3d at 97-98, for proposition that "ALJs may not rely on objective medical evidence (or the lack thereof) - even as just one of multiple factors - to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence").) Plaintiff "note[s] that [her] lack of weakness or normal strength on examinations do not address her allegations, as [she] was not complaining of weakness, but of pain[, and, t]hus, such normal examination findings do not in any way invalidate the symptoms that [she] has actually alleged." (Id.) Plaintiff's contentions fail for the following three reasons.

First, to the extent Plaintiff intends her contention that she could "'rely exclusively on subjective evidence in proving that her symptoms are so continuous and/or severe that they prevented her from working" (id. (brackets and ellipsis omitted) (quoting Oakes, 70 F.4th at 215)) to mean that the ALJ erred by considering objective medical evidence at all in analyzing the intensity, persistence, and limiting effects of Plaintiff's symptoms, such an argument lacks merit. Although the Fourth Circuit has "reiterate[d ] long-standing [Circuit] law . . . that disability

16

claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms," Arakas, 983 F.3d at 98, long-standing cases containing the substance of that holding, such as Craig and Hines (among others), clarify that, "[a]lthough a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers," Craig, 76 F.3d at 595 (emphasis added); see also Hines, 453 F.3d at 565 n.3 (quoting Craig, 76 F.3d at 595).

In other words, under the appropriate circumstances, an ALJ may choose to rely exclusively on a claimant's subjective symptom reports to find disabling symptoms; however, Oakes, Arakas, Craig, and Hines do not compel ALJs to consider only subjective evidence, as such a requirement would conflict with both the Act and its implementing regulations, which plainly require ALJs to consider a variety of factors, including objective medical evidence, in evaluating the intensity, persistence, and limiting effects of symptoms. See 42 U.S.C. § 423(d)(5)(A) ("Objective medical evidence of pain . . . established by medically acceptable clinical

17

or laboratory techniques (for example, deteriorating nerve or muscle tissue) <u>must</u> be considered in reaching a conclusion as to whether [an] individual is under a disability." (emphasis added)); <u>see also</u> 20 C.F.R. § 416.929(c) (directing ALJs to consider a claimant's medical history, <u>medical signs and laboratory findings</u>, daily activities, testimony about nature and location of pain, medication and other treatment used to alleviate pain, along with medical opinions, in assessing intensity of a claimant's symptoms). Here, in compliance with <u>Oakes</u>, <u>Arakas</u>, <u>Hines</u>, <u>Craig</u>, and the applicable regulations, the ALJ considered the objective medical evidence as <u>one part</u> of her evaluation of the intensity, persistence, and limiting effects of Plaintiff's alleged pain, as the ALJ also considered Plaintiff's medication and other treatment used to alleviate pain (<u>see</u> Tr. 22-23), and, as discussed in more detail below, the opinion evidence of record (<u>see</u> Tr. 24-26).

Second, Plaintiff's attempt to analogize the facts of her case to those present in <u>Arakas</u> falls short. In that case, the Fourth Circuit deemed <u>fibromyalgia</u> a "unique" disease, <u>Arakas</u>, 983 F.3d at 97, with "symptoms [that] are <u>entirely subjective</u>," <u>id.</u> at 96 (emphasis added), and noted that "physical examinations of patients with <u>fibromyalgia</u> will usually yield normal results — a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions," <u>id.</u> (emphasis added) (brackets omitted). The Fourth Circuit thus held that "ALJs may not rely on objective

18

medical evidence (or the lack thereof) – even as just one of multiple medical factors – to discount a claimant's subjective complaints regarding symptoms of <u>fibromyalgia</u>," because "[o]bjective indicators such as normal clinical and laboratory results simply have no relevance to the severity, persistence, or limiting effects of a claimant's <u>fibromyalgia</u>, based on the current medical understanding of the disease," <u>id.</u> at 97 (emphasis added). Approximately four years later, the Fourth Circuit extended that holding in <u>Arakas</u> to <u>major depressive disorder</u> ("MDD"). <u>See Shelley C. v. Commissioner of Soc. Sec.</u>, 61 F.4th 341, 361–62 (4th Cir. 2023) ("[Symptoms of MDD, like those of fibromyalgia, are '<u>entirely subjective</u>,' determined on a case-by-case basis." (emphasis in <u>Shelley C.</u>) (quoting <u>Arakas</u>, 983 F.3d at 96)). Notably, the Fourth Circuit has neither extended that holding in <u>Arakas</u> to pain arising from a healed bone fracture nor to chronic pain syndrome, and Plaintiff fails to explain how those conditions qualify as "disease[s] that do[] not produce [objective] evidence," <u>Arakas</u>, 983 F.3d at 97.  (<u>See</u> Docket Entry 11.)

Third, Plaintiff's assertion that the ALJ relied on findings of normal strength, bulk, range of motion, and gait to discount her allegations of severe <u>pain</u> does not hold up under closer scrutiny. As the above-quoted analysis by the ALJ makes clear, she found that, despite Plaintiff's allegations of severe leg pain, her post-operative course demonstrated "<u>signs of healing and no sign of</u>

19

hardware complication" (Tr. 22 (emphasis added)), and she "appeared in no acute distress, and she had but mild effusion" (Tr. 23 (emphasis added)). Thus, the ALJ cited to signs of healing, lack of surgical complications, lack of signs of distress, and findings of only mild effusion as inconsistent with Plaintiff's assertions of severe leg pain (see Tr. 22-23), and Plaintiff does not specifically argue that those findings lack relevance to her complaints of severe pain (see Docket Entry 11). Indeed, as noted by the ALJ, despite Plaintiff's assertions of leg pain ranging from 7 to 10 on a 10-point pain scale (see, e.g., Tr. 521, 602, 889, 895), her providers consistently noted that she appeared in no acute distress (see Tr. 504, 508-09, 514, 518, 524, 529, 535, 633, 846, 849, 852, 855, 857, 860, 862, 865, 873, 875, 884, 887, 889, 892, 897, 1056, 1066, 1083, 1099, 1102, 1109, 1223, 1231, 1237, 1245, 1251, 1605, 2234, 2263, 2271, 2411, 2537, 2545, 2552, 2558) and found any swelling minimal to mild (see Tr. 504, 529, 535).

The ALJ additionally noted that, "despite the alleged chronicity of inactivity, [Plaintiff] had normal bulk and tone as well as normal strength." (Tr. 23 (emphasis added).) Thus, contrary to Plaintiff's assertions (see Docket Entry 11 at 7), the ALJ did not rely on Plaintiff's normal bulk, tone, and strength to discount her complaints of severe leg pain but, rather, her testimony that, when her pain reached 8 out of 10, she could not walk and had to stay in bed or recline (see Tr. 103-04), she had a

20

lot of difficulty walking, sitting, and standing (<u>see</u> Tr. 104-05), and she usually sat with her leg reclined and elevated to waist level (<u>see</u> Tr. 106). As the ALJ observed (<u>see</u> Tr. 23), normal leg strength, bulk, and tone lacked consistency with Plaintiff's claims of "chronic[ ] inactivity" (Tr. 23). Similarly, the ALJ discounted Plaintiff's alleged need for a cane based on her "<u>upright gait</u> in the absence of any use of a hand-held assistive device[,] . . . <u>grossly intact range of motion</u> . . . as well as <u>normal strength with good muscle bulk and tone</u>." (<u>Id.</u> (emphasis added).) Once again, the ALJ did not find this evidence undermined Plaintiff's pain, but, rather, "<u>greatly contrast[ed] with the alleged exertional difficulties and needing to recline most of the day</u>." (<u>Id.</u> (emphasis added).)[8]

Plaintiff next challenges the ALJ's observation that Plaintiff "has a generally stable treatment history, and has been taking an opioid, with sparse changes" (Docket Entry 11 at 8 (citing Tr. 23)), because "[the ALJ] cannot fault [Plaintiff ] for failing to pursue other treatment options where none exist" (<u>id.</u> at 9 (citing <u>Arakas</u>, 983 F.3d at 101-02)). That argument fails, because the ALJ did not fault Plaintiff for failing to pursue additional surgery,

---

[8] Although Plaintiff argues that her "lack of weakness or normal strength on examinations do not address her allegations, as [she] was no complaining of weakness, but of pain" (Docket Entry 11 at 7), in fact, Plaintiff did complain of leg weakness, unsteadiness, and fear of falling as a basis for her cane usage (<u>see</u> Tr. 52-53, 417). Thus, the ALJ did not err by relying on findings of normal strength and gait to discount Plaintiff's assertions of needing a cane to ambulate.

21

injections, or other procedures; rather, the ALJ simply noted that Plaintiff's pain medications remained relatively unchanged during the relevant time period in this case, which "held relevance to the intensity, persistence, and limiting effects of her [pain] symptoms, and the ALJ did not err by relying on that fact." Laquita M. R. v. Bisignano, No. 1:24CV604, 2025 WL 2689043, at *13 (M.D.N.C. Sept. 19, 2025) (unpublished); see also SSR 16-3p, 2017 WL 5180304, at *9 ("Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." (emphasis added)).

Lastly, Plaintiff's contention that "the ALJ [] failed to perform a proper function-by-function evaluation of all the contested and relevant functions[,]" such as "how long [Plaintiff] is capable of maintaining a seated, walking, or standing position" (Docket Entry 11 at 9 (citing Dowling, 986 F.3d at 388-89, and Holland, 2018 WL 1970745, at *10)) fares no better. As to the role of the function-by-function analysis in the RFC determination, the relevant administrative ruling states: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis[ and,] . . . [o]nly after that[,] may

22

RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Social Security Ruling 96-8p, <u>Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims</u>, 1996 WL 374184, at *1 (July 2, 1996) ("SSR 98-9p"). The Fourth Circuit has addressed this administrative ruling and the issue of whether an ALJ's failure to articulate a function-by-function analysis necessitates remand. <u>See</u> <u>Mascio v. Colvin</u>, 780 F.3d 632, 636–37 (4th Cir. 2015). Specifically, the court stated "that a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested," <u>id.</u> at 636 (internal quotation marks omitted), but that "'remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review,'" <u>id.</u> (internal brackets and ellipsis omitted) (quoting <u>Cichocki v. Astrue</u>, 729 F.3d 172, 177 (2d Cir. 2013)).

Here, the ALJ did not expressly assess Plaintiff's abilities to sit, stand, and walk on a function-by-function basis (<u>see</u> Tr. 21-26); however, no basis for remand exists, because the ALJ's decision nevertheless supplies the necessary "accurate and logical bridge," <u>Woods v. Berryhill</u>, 888 F.3d 686, 694 (4th Cir. 2018) (internal quotation marks omitted), between the evidence and her

23

findings that Plaintiff's status-post femur fracture with hardware placement and chronic pain syndrome (A) qualified as severe impairments at step two of the SEP (see Tr. 19), but (B) did not cause limitations greater than the RFC's allowance of up to six hours of sitting, standing, and walking (in no more than two hour intervals generally) in an eight-hour workday (see Tr. 21).[9]  In that regard, the ALJ's evaluation of the opinion evidence provides support for the sitting, standing, and walking allowances in the RFC.  To begin, the ALJ found "persuasive" (Tr. 24) the opinions of the state agency medical consultants that Plaintiff remained capable of up to six hours total of sitting, standing, and walking in an eight-hour workday (see Tr. 127-28, 144-45).  In particular, the ALJ found as follows:

> [T]he [ALJ] finds the[] prior administrative medical findings are persuasive as they are supported by a review of the pertinent evidence of record at the time provided with consideration of the prior left femur fracture and chronic pain.  The opined limits are also consistent with the totality of evidence through the relevant time, including evidence submitted at the hearing level.  As noted [earlier in the ALJ's decision], for example, despite the prevalence of lower extremity pain,

---

[9] Plaintiff's assertion that the ALJ failed to make any findings regarding "the frequency of position change" Plaintiff's impairments caused (Docket Entry 11 at 9) falls short.  Although the ALJ did not make any express finding regarding how long Plaintiff could sit, stand, and walk at one time (see Tr. 21), the Commissioner's policy ruling makes clear that such exertional activities would occur in no more than two-hour increments generally with standard breaks, see Social Security Ruling 96-9p, Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work-Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work, 1996 WL 374185, at *6 (July 2, 1996) ("SSR 96-9p") (providing that normal workday includes "a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals").

24

> [Plaintiff] has presented with an <u>upright or normal gait</u> as well as <u>grossly intact range of motion and normal strength</u>. Although [the initial-level state agency medical consultant] opined a more restrictive crouching limitation than found [by the ALJ], such a variance does not significantly impact the overall [RFC] set out [in the ALJ's decision]. Moreover, [the reconsideration-level state agency medical consultant]'s opined limit for frequent crouching is more in line with the generally unremarkable physical exams with <u>no range of motion deficits</u> indicated as examples [cited earlier in the ALJ's decision] reveal.

(Tr. 24-25 (emphasis added) (internal parenthetical citations omitted).) Again, although Plaintiff takes issue with the ALJ's reliance on findings of normal range of motion, strength, and gait to discount these opinions (<u>see</u> Docket Entry 11 at 6-7), as discussed above, the ALJ properly relied on such findings to discount Plaintiff's alleged chronic inactivity, exertional limitations, and need for a cane, rather than to discount Plaintiff's alleged pain. Moreover, Plaintiff has identified no opinion evidence supporting her assertions of extreme limitations in sitting, standing, and walking. (<u>See</u> Docket Entry 11.)

In light of the foregoing analysis, Plaintiff has not shown that the ALJ failed to properly evaluate Plaintiff's subjective symptom reports, and, thus, Plaintiff's sole assignment of error falls short.

25

## III. CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED,** and that this action is **DISMISSED** with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

June 15, 2026

26